# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

CFCU COMMUNITY CREDIT UNION,

                          Appellant,

-vs-                          06-CV-6595-CJS

KEITH T. PIERCE, KRISTI A. PIERCE,          DECISION and ORDER
and DOUGLAS J. LUSTIG, Trustee,

                          Appellees.

## APPEARANCES

| | |
|---|---|
| For Appellant: | Edward Y. Crossmore, Esq.<br>The Crossmore Law Office<br>115 West Green Street<br>Ithaca, New York 14850 |
| For Appellee: | Stewart McDivitt, Esq.<br>Route 14 Ayers Street<br>P.O. Box 359<br>Montour Falls, New York 14865 |
| Trustee: | Douglas Lustig, Esq.<br>2 State Street<br>Suite 1600<br>Rochester, New York 14614 |

## INTRODUCTION

**Siragusa, J.** CFCU Community Credit Union ("CFCU") appeals an Order of the Honorable John C. Ninfo II, U.S. Bankruptcy Judge, entered on September 19, 2006, denying CFCU's motion to dismiss Keith and Kristi Pierce's ("the Pierces") Chapter 7

bankruptcy case pursuant to § 521(i)(2). 11 U.S.C. § 521(i)(2) (2005). For reasons discussed below, Judge Ninfo's Order is affirmed.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 158, "the district courts of the United States ... have jurisdiction to hear appeals from final judgments, orders and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1) (2005). "On an appeal the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceeds ...." Fed. R. Bankr. P. 8013. "Findings of fact ... shall not be set aside unless clearly erroneous ...." *Id.*

> Under this standard, the district court is not authorized to engage in independent fact findings and reviews the bankruptcy court's findings only for clear error. The findings of fact can only be set aside by the district court when, after reviewing the evidence, the court is left with the firm and definite conviction that a mistake has been committed.

*Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc.*, 279 B.R. 55, 61 (Bankr. W.D.N.Y. 2002) (citations and internal quotations omitted). However, when a district court is reviewing conclusions of law, a *de novo* standard is used. *Id.*; *see also, In re Enron North Am. Corp.*, 312 B.R. 27, 28 (Bankr. S.D.N.Y. 2004).

**BACKGROUND**

On March 7, 2006, the Pierces filed for chapter 7 bankruptcy, but on March 21, 2006, CFCU's lawyer wrote the Pierces a letter pointing out that they had not filled in parts of Schedules I and J. On May 5, 2006, CFCU's lawyer filed this letter with the bankruptcy

court, which he followed up with a motion to dismiss on May 31, 2006. Three hearings were held on the issue of whether the Pierces' bankruptcy case should be dismissed: the first was held on June 1, the second June 30, and the third on July 21. The Pierces filed amended versions of Schedules I and J on June 20, 2006.[1] Section 521(a)(1)(B)(vi) requires a debtor disclose any reasonably anticipated increase in income or expenses for the twelve-months subsequent to discharge. Judge Ninfo found that, since the Pierces had no reasonably anticipated increases in either their income or expenses, that their leaving blank Question 17 of Schedule I and Question 19 of Schedule J was an accurate representation. (App. at 2.) However, when the Pierces amended Schedule J they stated, in regards to expenditures, "[e]xcept the Husband's ex-wife is petitioning for increased child support for an 11 year old daughter the husband has with his ex-wife." (App. at 27.) Although the Pierces had no reasonably expected increases in income for the twelve months after filing for bankruptcy, CFCU insisted that the Pierces not leave Question 17 blank, so the Pierces entered "[n]one." (App. at 26.)

The Pierces received their discharge on July 28, 2006, and Judge Ninfo issued an Order denying CFCU's motion to dismiss on September 19, 2006. An Order denying CFCU's motion for certification of direct appeal to the Second Circuit was issued on November 13, 2006. A notice of appeal from the bankruptcy court was issued on November 29, 2006.

---

[1] Questions 17 and 19 of Schedules I and J ask a debtor to describe any reasonably anticipated increases or decreases in income or expenses. However, § 521(a)(1)(B)(vi) only requires a debtor to describe increases in income or expenses.

## ANALYSIS

**Statutory Language**

Section 521(i)(1) states in pertinent part:

> [I]f an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the filing of the petition, the case shall be automatically dismissed on the 46th day of the filing of the petition.

11 U.S.C. § 521(i)(1) (2005). "The automatic dismissal provision in Section 521(i) is intended to ensure that debtors comply with the statutory requirement to assist a Chapter 7 trustee with the production of documents necessary for the administration of the estate." *In re Tay-Kwamya*, 367 B.R. 422, 424 (Bankr. S.D.N.Y. 2007). Section 521(i) "intends to remedy ... those instances where business debtors would operate as debtors in possession for many months without filing schedules and financial affairs, relying on multiple extensions of time from the court." William L. Norton, Jr., *Norton Bankruptcy Law and Practice*, § 55:4 (3d ed. 2009). The problem is that § "521(i) does not provide a procedure for dismissal. Although § 521(i)(1) states that dismissal is automatic there is no indication how this occurs." 1-349 Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual*, P 349.01 (3d ed. 2009).

Were 521(i)(1)'s automatic dismissal truly automatic, it would create an odd result: if a bankrupt failed to comply with § 521(a)(1), but no-one perceived the deficiency, discharge might still be granted, even though— unbeknownst to anyone— the case had been dismissed. Section 521(i)(2) adds to the confusion since it requires a court to file an order for an automatic discharge. Yet if the discharge were truly automatic, an order would be unnecessary.

Section 521 also raises procedural difficulties. In pertinent part, § 521(i)(2) states:

> Notwithstanding any other provision of this subsection, on the motion of the trustee filed before the expiration of the applicable period of time specified in paragraph (1), (2), or (3), and after notice and a hearing, the court may decline to dismiss the case if the court finds that the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) and that the best interests of creditors would be served by administration of the case.

11 U.S.C. § 521(i)(4) (2005). The problem here is that if the trustee learns of the debtor's failure to meet § 521(a)(1)'s demands after the forty-five day period, it is not possible for the trustee to oppose the automatic dismissal. Thus, a creditor who discovers a flaw with a debtor's § 521(a)(1) compliance can wait until the forty-sixth day after filing, at which time the trustee cannot oppose the § 521(i) motion for automatic dismissal.

CFCU's appeal raises a difficult problem: were this Court to reverse the bankruptcy court's order, and find that the Pierces did not comply with § 521(a)(1), it is unclear how their discharge and liquidation could be reversed three years after it was granted. Similarly, it is not clear what remedy CFCU is seeking. This brings up another confusing scenario whereby the Court would have liquidated the debtors' assets *and* denied bankruptcy relief, so leaving the Pierces with the worst of both worlds. As one bankruptcy judge explained:

> And if the case goes on as normal
> and debtor gets a discharge formal,
> what if a year later some fanatic
> claims the case was dismissed automatic?
> Was there a case, or wasn't there one?
> How do you undo what's been done?
> Debtor's property is gone as if by a thief,
> and Debtor is stripped but gets no relief.[2]

---

[2] For reasons best known to Chief Judge A. Jay Cristol, *In re Riddle* is written in verse.

*In re Riddle*, 344 B.R. 702 (Bankr. S.D. Fla. 2006). There is also a question of what harm, if any, has CFCU suffered from Pierces' bankruptcy discharge? If CFCU has not suffered any harm, what is the point of their appeal?

**Case Law**

The Court has not found any cases in which § 521(i)'s automatic dismissal has been applied to a debtor's failure to meet § 521(a)(1)(B)(vi), nor has CFCU cited any. Section 521(a)(1)(B)(vi) requires a debtor to file "a statement disclosing any reasonably anticipated increase in income or expenditures over the 12-month period following the date of the filing of the petition." 11 U.S.C. § 521(a)(1)(B)(vi) (2005).

As far as the Court can determine, the automatic dismissal provision of § 521(i)(1) has been successfully invoked only in situations where bankruptcy trustees have moved for such dismissal because the debtor has failed to file pay advices as required by § 521(a)(1)(B)(iv). In that regard, the cases involving § 521(i) automatic dismissal have very similar facts: debtor files for bankruptcy; debtor fails to file pay advices pursuant to § 521(a)(1)(B)(iv); trustee makes § 521(i) motion. *In re Miller*, 383 B.R. 767 (B.A.P. 10th Cir. 2008); *In re Richardson* ___ B.R. ____, No. 08-15316 K, 2009 WL 1230319 (Bankr. W.D.N.Y. May 4, 2009); *In re Gilbert*, 403 B.R. 297 (Bankr. W.D.N.Y. April 10, 2009); *In re Catania*, 397 B.R. 667 (Bankr. W.D.N.Y. 2008); *In re Tay-Kwamya*, 367 B.R. 422 (Bankr. S.D.N.Y. 2007); and *In re Wojda*, 371 B.R. 656 (Bankr. W.D.N.Y. 2007).

**CONCLUSION**

Since it is unclear how a bankruptcy discharge can be reversed three years after it has been granted, CFCU's appeal is denied.

　　　　IT IS SO ORDERED.

Dated:　July 17, 2009
　　　　Rochester, New York

　　　　　　　　ENTER:

　　　　　　　　　　　　/s/ Charles J. Siragusa
　　　　　　　　　　　　Charles J. Siragusa
　　　　　　　　　　　　United States District Judge